## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANNA M. MOORE and ASHLEY GWEN LACOMBE, individually, and on behalf of all others similarly situated, | Case No. |
| | CLASS ACTION COMPLAINT |
| Plaintiffs, | |
| v. | |
| PROGRESS SOFTWARE CORPORATION, | |
| Defendant. | JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiffs Anna M. Moore and Ashley Gwen Lacombe ("Plaintiffs"), individually and on behalf of all others similarly situated ("Class Members"), bring this action against Progress Software Corporation ("PSC" or "Defendant"), by and through their attorneys, and allege, based upon personal knowledge as to their own actions, and based upon information and belief as to all other matters, as follows.

## I.      INTRODUCTION

1.      PSC is a Massachusetts-based software company that markets, sells, and supports a wide variety of software products to private corporate and government entities throughout the United States, including healthcare service providers and state DMV agencies.

2.      One of PSC's most popular and successful products is "MOVEit" a cloud hosting and secure file transfer program/service.

3.      As PSC's healthcare industry clients and customers utilized the MOVEit program/service, PSC collected, maintained, stored highly sensitive personal and medical information pertaining to its customers' patients, including, but not limited to: Social Security

numbers, dates of birth, full names, addresses, telephone numbers, and driver's license numbers ("personally identifying information" or "PII"); and information regarding medical treatment, diagnosis, and prescriptions, medical record numbers, health insurance information, and other protected health information ("private health information" or "PHI"); and financial account/payment card information ("financial account information") (collectively "Private Information").

4.     On May 31, 2023, PSC posted a notice on its website informing the public that it had discovered a SQL injection vulnerability in the MOVEit program and that this vulnerability had allowed unauthorized third-parties (*i.e.,* cybercriminals) to access and obtain the vast stores of highly sensitive Private Information stored within the MOVEit servers (the "Data Breach").[1]

5.     PSC has declined to send a notice of this Breach to affected individuals (the "Class Members"). Instead, PSC's affected customers have begun to notify their own customers, patients, and other users of the Breach.

6.     One of PSC's customers is the Louisiana Department of Public Safety and Corrections, Public Safety Services, Office of Motor Vehicles ("OMV").  Plaintiffs Moore and Lacombe received email Notification from the OMV in mid to late July 2023 notifying them of the Data Breach.  The OMV Notice of Data Security Incident advised Plaintiffs Moore and Lacombe that the files involved in the incident contained the personal information of individuals who applied for and/or were issued a Louisiana driver's license, identification card and/or vehicle registration.  The information varied by individual but included name, and one or more of the following:  address, date of birth, Social Security number; driver's license, learner's permit, or

---

[1] MOVEit Transfer Critical Vulnerability (May 2023) (CVE-2023-34362), Progress Community, available at https://community.progress.com/s/article/MOVEit-Transfer-Critical-Vulnerability-31May2023  (last accessed July 4, 2023).

identification card number; height, eye color; vehicle registration information, and handicap placard information.

7.     Plaintiff Anna Moore is a holder of a valid Louisiana Driver's License, and her Private Information was compromised by the Breach.

8.     Plaintiff Ashley Gwen Lacombe is a holder of a valid Louisiana Driver's License, and her Private Information was compromised by the Breach.

9.     PSC, despite being a sophisticated software company, failed to invest in adequate data security, and as a direct, proximate, and foreseeable result of its inexcusable failure to implement reasonable security protections sufficient to prevent an eminently avoidable cyberattack, unauthorized actors compromised its company networks and accessed its customers' files containing highly sensitive Private Information.

10.     PSC's failure to promptly notify Plaintiffs and Class members that their Private Information was exfiltrated, PSC has *still* declined to do so as of the date of this complaint, due to PSC's apparent security failures virtually ensured that the unauthorized third parties who exploited those security lapses could monetize, misuse and/or disseminate that Private Information before Plaintiffs and Class members could take affirmative steps to protect their sensitive information. As a result, Plaintiffs and Class members will suffer indefinitely from the substantial and concrete risk that their identities will be (or already have been) stolen and misappropriated.

11.     PSC failed to take sufficient and reasonable measures to safeguard its data security systems and protect highly sensitive data in order to prevent the Data Breach from occurring; to disclose to its patients, and the public at large, that it lacked appropriate data systems and security practices to secure Private Information; and to timely detect and provide adequate notice of the

Data Breach to affected individuals. Due to PSC's failures, Plaintiffs and millions of other individuals had their Private Information compromised.

12.      As a result of PSC's negligent, reckless, intentional, and/or unconscionable failure to adequately satisfy its contractual, statutory, and common-law obligations, Plaintiffs' and Class members' Private Information was accessed and acquired by unauthorized third-parties for the express purpose of misusing the data and causing further irreparable harm to their personal, financial, reputational, and future well-being. Plaintiffs and Class members face the real, immediate, and likely danger of identity theft and misuse of their Private Information, especially because their Private Information was specifically targeted by malevolent actors.

13.      Plaintiffs and Class members suffered injuries as a result of PSC's conduct including, but not limited to: lost or diminished value of their Private Information; out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information; lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to the loss of time needed to take appropriate measures to avoid unauthorized and fraudulent charges; time needed to change usernames and passwords on their accounts; time needed to investigate, correct and resolve unauthorized access to their accounts; time needed to deal with spam messages and e-mails received subsequent to the Data Breach; charges and fees associated with fraudulent charges on their accounts; and the continued and increased risk of compromise to their Private Information, which remains in PSC's possession and is subject to further unauthorized disclosures so long as PSC fails to undertake appropriate and adequate measures to protect their Private Information. These risks will remain for the lifetimes of Plaintiffs and the Class.

14.     Accordingly, Plaintiffs bring this action on behalf of all those similarly situated to seek relief from Defendant's failure to reasonably safeguard Plaintiffs' and Class members' Private Information; its failure to reasonably provide timely notification that Plaintiffs' and Class members' Private Information had been compromised by an unauthorized third party; and for intentionally and unconscionably deceiving Plaintiffs and Class members concerning the status, safety, location, access, and protection of their Private Information.

## II.    PARTIES

15.     Plaintiff Anna Moore is a citizen and resident of Louisiana. Her Private Information came into PSC's possession through her being a licensed driver in the state of Louisiana. The Louisiana OMV was one of PSC's customers and used the MOVEit program to "securely" store and transfer the sensitive information of all holders of Louisiana drivers' licenses, Louisiana identification cards, and/or Louisiana vehicle registrations. Plaintiff Moore's Private Information was among those compromised by the Data Breach.

16.     Plaintiff Ashley Gwen Lacombe is a citizen and resident of Louisiana. Her Private Information came into PSC's possession through her being a licensed driver in the state of Louisiana. The Louisiana OMV was one of PSC's customers and used the MOVEit program to "securely" store and transfer the sensitive information of all holders of Louisiana drivers' licenses, Louisiana identification cards, and/or Louisiana vehicle registrations. Plaintiff Lacombe's Private Information was among those compromised by the Data Breach.

17.     Defendant PSC is a sophisticated software company that sells, markets, and supports a wide variety of software products to private corporate and government entities throughout the United States, including healthcare service providers. PSC is the current seller and maintainer of the MOVEit cloud hosting and "secure" file transfer program. PSC is a

Massachusetts corporation with its principal place of business at 15 Wayside Road, Suite 400, Burlington, Massachusetts 01803.

### III.    JURISDICTION AND VENUE

18.    This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2), because this is a class action in which the matter in controversy exceeds the sum of $5,000,000, the number of class members exceeds 100, and at least one Class member is a citizen of a state different from Defendant. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because all claims alleged herein form part of the same case or controversy.

19.    This Court has personal jurisdiction over Defendant because Defendant is headquartered in Massachusetts.

20.    Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's and Class members' claims occurred in this District.

### IV.    FACTUAL ALLEGATIONS

**A.    Progress Software Corporation – Background**

21.    MOVEit was originally developed by Ipswitch, Inc. ("Ipswitch").[2] In 2019, PSC wholly purchased and absorbed Ipswitch and its intellectual property, including the MOVEit program, for $225 million. Thereafter, PSC took over the marketing, sale, and continued development of the MOVEit cloud storage and "secure" file transfer program and its attendant services.

---

[2] *MOVEit*, IPSWITCH, available at https://www.ipswitch.com/moveit (last accessed July 3, 2023).

22.     PSC markets itself as "the experienced, trusted provider of products designed with you, our customers, in mind" and proclaims that one of its values is to "uphold trust" of its clients and consumers.

23.     The MOVEit program was utilized by numerous government agencies and private, corporate parties. And through the program, PSC acquired vast amounts of PII, PHI, and financial account information from the Class Members. PSC was entrusted with keeping this Private Information safe.

**B.      The Data Breach**

24.     On May 31, 2023, PSC discovered "a vulnerability in MOVEit Transfer and MOVEit Cloud (CVE-2023-34362) that could lead to escalated privileges and potential unauthorized access to the environment.".[3]

25.     Cybercriminals took full advantage of the CVE-2023-34362 vulnerability to access the MOVEit database, steal Private Information,[4] and launch a massive spree of ransomware attacks on MOVEit's customers using the Clop ransomware program.[5]

26.     CVE-2023-34362 presented an unacceptably simply and easy avenue of attack for malicious actors: SQL injection.[6] SQL injection occurs when a database requests an input from a user, such as a username/userid. A malicious actor can use this to inject a SQL statement into the

---

[3] *MOVEit Transfer and MOVEit Cloud Vulnerability, Progress Security Center*, available at https://www.progress.com/security/moveit-transfer-and-moveit-cloud-vulnerability (last accessed July 3, 2023).

[4] Khandelwal Swati, *Another Critical Unauthenticated SQLi Flaw Discovered in MOVEit Transfer Software*, The Hacker News (July 7, 2023), available at https://thehackernews.com/2023/07/another-critical-unauthenticated-sqli.html (last accessed July 7, 2023).

[5] Carly Page, *Hackers launch another wave of mass-hacks targeting company file transfer tools*, TechCrunch (June 2, 2023), available at https://techcrunch.com/2023/06/02/hackers-launch-another-wave-of-mass-hacks-targeting-company-file-transfer-tools/ (last accessed July 3, 2023).

[6] Khandelwal Swati, *Another Critical Unauthenticated SQLi Flaw Discovered in MOVEit Transfer Software*, The Hacker News (July 7, 2023), available at https://thehackernews.com/2023/07/another-critical-unauthenticated-sqli.html (last accessed July 7, 2023).

input command which will unknowingly run on the database if the database is not properly programed to reject such a command.

27.    After further investigation, PSC discovered additional severe vulnerabilities, which were labeled CVE-2023-36932, CVE-2023-36933, and CVE-2023-36934.[7] CVE-2023-36932 and CVE-2023-36934 were additional SQL injection vulnerabilities while CVE-2023-36933 would have allowed malicious actors to completely shut down the MOVEit program.[8]

28.    The CVE-2023-34362 vulnerability had existed for at least two years. The corporate investigation and risk consulting firm Kroll discovered evidence that the cybercrime gang had been experimenting with ways to exploit CVE-2023-34362 as far back as July 2021.[9]

29.    Kroll also discovered that the notorious Cl0p ransomware gang had successfully infiltrated MOVEit's database using this method and began extracting data as early as April 2023.[10]

30.    Despite being in possession of truly astonishing quantities of Private Information, MOVEit's database security was full of glaring vulnerabilities that went undiscovered and unpatched for at least two years. And a simple SQL injection allowed a notorious gang of cyber criminals unfettered access to plunder MOVEit's data vaults for *at least* two months before PSC discovered what had been done.

## C.    PSC's Many Failures Both Prior to and Following the Breach

---

[7] *Id.*

[8] *Id.*

[9] Ravie Lakshmanan, *New Critical MOVEit Transfer SQL Injection Vulnerabilities Discovered - Patch Now!* The Hacker News (June 10, 2023), available at https://thehackernews.com/2023/06/new-critical-moveit-transfer-sql.html#:~:text=%22An%20attacker%20could%20submit%20a,7)%2C%202021.1 (last accessed July 4, 2023).

[10] *Id.*

31.     First, PSC could have prevented this Data Breach by properly hardening the MOVEit databases against SQL injection attacks or by timely discovering such vulnerabilities and quickly patching them before they were exploited. Indeed, PSC had *two* years to discover not only the vulnerability but also the fact that cybercriminals had attempted to exploit the same breach before.

32.     Second, after the vulnerability *was* finally successfully exploited, PSC did not discover that the MOVEit databases had been compromised until almost two months had passed. Two months that allowed an infamous cyber gang to access and empty the proverbial vault.

33.     Third, when PSC finally acknowledged that it had experienced a breach, it failed to inform Plaintiff's and Class Members that their information had been compromised. It simply released a notice on its website and pushed an update to its programs.

34.     Fourth, PSC has, to this day, made no effort to protect Plaintiffs and the Class Members from the long-term consequences of PSC's previously mentioned failures. It has not even offered any kind of complimentary credit monitoring services to Plaintiffs or other Class Members, which would still be insufficient to mitigate the heightened risk of identity theft that Plaintiffs and the Class Members would suffer for the remainder of their lives.

35.     In short, PSC's myriad failures, including the failure to timely detect the Data Breach and total failure to properly notify Plaintiffs and Class Members that their personal and medical information had been exfiltrated, allowed cyber criminals to access, misappropriate and misuse Plaintiffs' and Class members' Private Information for months before PSC finally afforded victims the opportunity to take proactive steps to defend themselves and mitigate the near- and long-term consequences of the Data Breach.

### D.    Data Breaches Pose Significant Threats

36.    Data breaches have become a constant threat that, and PII, including Social Security numbers and driver's license numbers, are a particularly valuable commodity and a frequent target of hackers.

37.    In 2022, the Identity Theft Resource Center's Annual End-of-Year Data Breach Report listed 1,802 total compromises involving 422,143,312 victims for 2022, which was just 50 compromises short of the current record set in 2021.[11] The HIPAA Journal's 2022 Healthcare Data Breach Report reported 707 compromises involving healthcare data, which is just 8 shy of the record of 715 set in 2021 and still double that of the number of similar such compromises in 2017 and triple the number of compromises in 2012.[12]

38.    Statista, a German entity that collects and markets data relating to, among other things, data breach incidents and the consequences thereof, confirms that the number of data breaches has been steadily increasing since it began a survey of data compromises in 2005 with 157 compromises reported that year, to a peak of 1,862 in 2021, to 2022's total of 1,802.[13] The number of impacted individuals has also risen precipitously from approximately 318 million in 2015 to 422 million in 2022, which is an increase of nearly 50%. [14]

---

[11] *2022 End of Year Data Breach Report*, Identity Theft Resource Center (January 25, 2023), available at: https://www.idtheftcenter.org/publication/2022-data-breach-report/?utm_source=press+release&utm_medium=web&utm_campaign=2022+Data+Breach+Report+ (last accessed March 23, 2023).

[12] *2022 Healthcare Data Breach Report*, The HIPAA Journal (January 24, 2023), available at: https://www.hipaajournal.com/2022-healthcare-data-breach-report/ (last accessed March 23, 2023).

[13] *Annual Number of Data Breaches and Exposed Records in the United States from 2005 to 2022*, Statista, available at: https://www.statista.com/statistics/273550/data-breaches-recorded-in-the-united-states-by-number-of-breaches-and-records-exposed/ (last accessed last accessed March 23, 2023).

[14] *Id.*

39.     Data breaches are a constant threat because PII is routinely traded on the dark web as s simple commodity, with social security numbers being so ubiquitous to be sold at as little as $2.99 apiece and passports retailing for as little as $15 apiece.[15]

40.     In addition, the severity of the consequences of a compromised social security number belies the ubiquity of stolen numbers on the dark web. Criminals and other unsavory elements can fraudulently take out loans under the victims' name, open new lines of credit, and cause other serious financial difficulties for victims:

> [a] dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[16]

This is exacerbated by the fact that the problems arising from a compromised social security number are exceedingly difficult to resolve. A victim is forbidden from proactively changing his or her number unless and until it is actually misused, and harm has already occurred. And even this delayed remedial action is unlikely to undo the damage already done to the victims:

> Keep in mind that a new number probably won't solve all your problems. This is because other governmental agencies (such as the IRS and state motor vehicle agencies) and private businesses (such as banks and credit reporting companies) will have records under your old number. Along with other personal information, credit reporting companies use the number to identify your credit record. So using a new number won't guarantee you a fresh start. This is especially true if your other personal information, such as your name and address, remains the same.[17]

---

[15] *What is your identity worth on the dark web?* Cybernews (September 28, 2021), available at: https://cybernews.com/security/whats-your-identity-worth-on-dark-web/ (last accessed March 23, 2023).

[16] United States Social Security Administration, *Identity Theft and Your Social Security Number*, United States Social Security Administration (July 2021), available at: https://www.ssa.gov/pubs/EN-05-10064.pdf (last accessed March 23, 2023).

[17] *Id.*

41.    The Federal Trade Commission ("FTC") has brought dozens of cases against companies that have engaged in unfair or deceptive practices involving inadequate protection of consumers' personal data. The FTC has publicized enforcement actions to place companies like Defendant on notice of their obligation to safeguard customer information.

42.    Indeed, cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of and take appropriate measures to prepare for and are able to thwart such an attack.

43.    Given the nature of PSC's Data Breach, as well as the length of the time PSC's networks were breached and the long delay in notification to the Class, it is foreseeable that the compromised Private Information has been or will be used by hackers and cybercriminals in a variety of devastating ways. Indeed, the cybercriminals who possess Plaintiff's and Class members' Private Information can easily obtain Plaintiffs' and Class members' tax returns or open fraudulent credit card accounts in Class members' names.

44.    Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach, because credit card victims can cancel or close credit and debit card accounts.[18] The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change.

45.    Despite the prevalence of public announcements of data breach and data security compromises, its own acknowledgment of the risks posed by data breaches, and its own

---

[18] *See* Jesse Damiani, *Your Social Security Number Costs $4 On The Dark Web, New Report Finds*, Forbes, Mar 25, 2020, available at https://www.forbes.com/sites/jessedamiani/2020/03/25/your-social-security-number-costs-4-on-the-dark-web-new-report-finds/?sh=6a44b6d513f1 (last accessed March 11, 2023).

acknowledgment of its duties to keep Private Information private and secure, PSC failed to take appropriate steps to protect the Private Information of Plaintiffs and the Class from misappropriation. As a result, the injuries to the Plaintiffs and the Class were directly and proximately caused by PSC's failure to implement or maintain adequate data security measures for customers' customers.

**E.    PSC Had a Duty and Obligation to Protect Private Information**

46.    PSC has an obligation, both statutory and self-imposed, to keep confidential and protect from unauthorized access and/or disclosure Plaintiffs' and Class members' Private Information. PSC's obligations are derived from: 1) government regulations and state laws, including HIPAA and FTC rules and regulations; 2) industry standards; and 3) promises and representations regarding the handling of sensitive PII and medical records. Plaintiffs and Class members provided, and PSC obtained, their information on the understanding that it would be protected and safeguarded from unauthorized access or disclosure.

47.    The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[19] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[20]

---

[19] 17 C.F.R. § 248.201 (2013).

[20] *Id.*

48.     The FTC has issued numerous guides for businesses highlighting the importance of reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-marking.[21]

49.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established guidelines for fundamental data security principles and practices for business.[22] The guidelines note businesses should protect the personal information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct security problems.[23] The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[24] PSC clearly failed to do any of the foregoing, as evidenced by the length of the Data Breach, the fact that the Breach went undetected, and the amount of data exfiltrated.

50.     Here, at all relevant times, PSC was fully aware of its obligation to protect the PII Private Information of its customers' customers, including Plaintiffs and the Class, and on information and belief, PSC is a sophisticated and technologically savvy company that relies

---

[21] *Start With Security*, Federal Trade Commission (June 2015), available at
https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.

[22] *Protecting Personal Information: A Guide for Business*, Federal Trade Comm'n

(October 2016), available at https://www.ftc.gov/tips-advice/business-center/guidance/protecting-personal-information-guide-business.

[23] *Id.*

[24] *Id.*

extensively on technology systems and networks to maintain its practice, including storing its customers' customers PII to operate its business.

51.    PSC had and continues to have a duty to exercise reasonable care in collecting, storing, and protecting Private Information from the foreseeable risk of a data breach. The duty arises out of the special relationship that exists between PSC and Plaintiffs and Class members. PSC alone had the exclusive ability to implement adequate security measures to its cyber security network to secure and protect Plaintiffs' and Class members' Private Information.

52.    PSC's failure to follow the FTC guidelines and its subsequent failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential data constitutes unfair acts or practices prohibited by Section 5 of the Federal Trade Commission Act, 14 U.S.C. § 45.

53.    Further, PSC had a duty to promptly notify Plaintiffs and the Class that their Private Information was accessed by unauthorized persons.

**F.    PSC Violated HIPAA, FTC and Industry Standard Data Protection Protocols**

54.    The FTC rules, regulations, and guidelines obligate businesses to protect PII and PHI, from unauthorized access or disclosure by unauthorized persons.

55.    At all relevant times, PSC was fully aware of its obligation to protect the PII entrusted to it by Class members, because it is a sophisticated business entity that is in the business of maintaining and transmitting PII..

56.    PSC was also aware of the significant consequences of its failure to protect Private Information for the thousands of individuals who provided their PII and knew that this data, if hacked, would gravely injure consumers, including Plaintiffs and Class members.

57.    Unfortunately, PSC failed to comply with FTC rules, regulations and guidelines, and industry standards concerning the protection and security of Private Information. As evidenced by the duration, scope, and nature of the Data Breach, among its many deficient practices, PSC failed in, *inter alia*, the following respects:

a.    Developing and employing adequate intrusion detection systems;

b.    Engaging in regular reviews of audit logs and authentication records;

c.    Developing and maintaining adequate data security systems to reduce the risk of data breaches and cyberattacks;

d.    Ensuring the confidentiality and integrity of its customers' customers' PII and records that Defendant receives and maintains;

e.    Protecting against any reasonably anticipated threats or hazards to the security or integrity of its customers' customers' Private Information;

f.    Implementing policies and procedures to prevent, detect, contain, and correct security violations;

g.    Developing adequate policies and procedures to regularly review records of system activity, such as audit logs, access reports, and security incident tracking reports;

h.    Implementing technical policies, procedures and safeguards for electronically stored information concerning Private Information that permit access for only those persons or programs that have specifically been granted access; and

i.    Other similar measures to protect the security and confidentiality of its customers' Private Information.

58.    Had PSC implemented the above-described data security protocols, policies, and/or procedures, the consequences of the Data Breach could have been avoided or greatly reduced. PSC could have prevented or detected the Data Breach prior to the hackers accessing PSC's systems and extracting sensitive and personal information; the amount and/or types of Private Information accessed by the hackers could have been avoided or greatly reduced; and current and Class

Members would have been notified sooner, allowing them to promptly take protective and mitigating actions.

## G. PSC's Data Security Practices are Inadequate and Inconsistent with its Self-Imposed Data Security Obligations

59.    PSC represented that it "guarantees the security of sensitive files," and promises, among other things: to keep customers' files private; comply with industry standards related to data security and maintenance of its customers' files and the Private Information contained therein; only disclose the sensitive information for business purposes and reasons related to the services it provides; and provide adequate notice to individuals if their Private Information is disclosed without authorization.[25]

60.    Plaintiffs and Class members provided their Private Information to PSC in reliance on its promises and self-imposed obligations to keep PII confidential, and to secure the Private Information from unauthorized access by malevolent actors. It failed to do so.

61.    Had PSC undertaken the actions that federal and state law require, the Data Breach could have been prevented or the consequences of the Data Breach significantly reduced, as PSC would have detected the Data Breach prior to the hackers extracting data from PSC's networks, and PSC's customers' customers would have been notified of the Data Breach sooner, allowing them to take necessary protective or mitigating measures much earlier.

## H. Plaintiffs and the Class Suffered Harm Resulting from the Data Breach

62.    Like any data hack, the Data Breach presents major problems for all affected.[26]

---

[25] *Progress Brochure*, available at https://d117h1jjiq768j.cloudfront.net/docs/default-source/default-document-

library/progress-corporate-brochure-2023-rgb.pdf?sfvrsn=a0b1f671_3 (last accessed July 4, 2023).

[26] Paige Schaffer, *Data Breaches' Impact on Consumers*, Insurance Thought Leadership (July 29, 2021), available at https://www.insurancethoughtleadership.com/cyber/data-breaches-impact-consumers (last accessed March 23, 2023).

63.     The FTC warns the public to pay particular attention to how they keep personally identifying information including Social Security numbers and other sensitive data. As the FTC notes, "once identity thieves have your personal information, they can drain your bank account, run up charges on your credit cards, open new utility accounts, or get medical treatment on your health insurance."[27]

64.     The ramifications of PSC's failure to properly secure Plaintiff's and Class members' Private Information are severe. Identity theft occurs when someone uses another person's financial, and personal information, such as that person's name, address, Social Security number, driver's license number, and other information, without permission to commit fraud or other crimes.

65.     According to data security experts, one out of every four data breach notification recipients become a victim of identity fraud.

66.     Furthermore, PII has a long shelf-life because it contains different forms of personal information, it can be used in more ways than one, and it typically takes time for an information breach to be detected.

67.     Accordingly, PSC's wrongful actions and/or inaction and the resulting Data Breach have also placed Plaintiff and the Class at an imminent, immediate, and continuing increased risk of identity theft and identity fraud.[28]   Indeed, "[t]he level of risk is growing for anyone whose

---

[27]*Warning Signs of Identity Theft*, Federal Trade Comm'n, available at https://www.identitytheft.gov/#/Warning-Signs-of-Identity-Theft (last accessed March 11, 2023).

[28] *Data Breach Victims More Likely To Suffer Identity Fraud*, INSURANCE INFORMATION INSTITUTE BLOG (February 23, 2012), available at http://www.iii.org/insuranceindustryblog/?p=267 (last accessed March 11, 2023).

information is stolen in a data breach."[29]  Javelin Strategy & Research, a leading provider of quantitative and qualitative research, notes that "[t]he theft of SSNs places consumers at a substantial risk of fraud."[30]   Moreover, there is a high likelihood that significant identity fraud and/or identity theft has not yet been discovered or reported.  Even data that has not yet been exploited by cybercriminals presents a concrete risk that the cybercriminals who now possess Class members' Private Information will do so later or re-sell it.

68.    Here, due to the Breach, Plaintiffs and Class members have been exposed to injuries that include, but are not limited to:

a.    Theft of Private Information;

b.    Costs associated with the detection and prevention of identity theft and unauthorized use of financial accounts as a direct and proximate result of the Private Information stolen during the Data Breach;

c.    Damages arising from the inability to use accounts that may have been compromised during the Data Breach;

d.    Costs associated with spending time to address and mitigate the actual and future consequences of the Data Breach, such as finding fraudulent charges, cancelling and reissuing payment cards, purchasing credit monitoring and identity theft protection services, placing freezes and alerts on their credit reports, contacting their financial institutions to notify them that their personal information was exposed and to dispute fraudulent charges, imposition of withdrawal and purchase limits on compromised accounts, including but not limited to lost productivity and opportunities, time taken from the enjoyment of one's life, and the inconvenience, nuisance, and annoyance of dealing with all issues resulting from the Data Breach, if they were fortunate enough to learn of the Data Breach despite PSC's total failure in disseminating notice in accordance with state law;

---

[29] Susan Ladika, *Study: Data Breaches Pose A Greater Risk*, CREDITCARDS.COM (July 23, 2014), available at http://www.creditcards.com/credit-card-news/data-breach-id-theft-risk-increase-study-1282.php (last accessed March 11, 2023).

[30] THE CONSUMER DATA INSECURITY REPORT: EXAMINING THE DATA BREACH- IDENTITY FRAUD PARADIGM IN FOUR MAJOR METROPOLITAN AREAS, available at https://www.it.northwestern.edu/bin/docs/TheConsumerDataInsecurityReport_byNCL.pdf) (last accessed March 11, 2023).

    e.    The imminent and impending injury resulting from potential fraud and identity theft posed because their Private Information is exposed for theft and sale on the dark web; and

    f.    The loss of Plaintiffs' and Class members' privacy.

69.    Plaintiffs and Class members have suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from their Private Information being accessed by cybercriminals, risks that will not abate within a mere one to two years: the unauthorized access of Plaintiffs' and Class members' Private Information, especially their Social Security numbers, puts Plaintiffs and the Class at risk of identity theft indefinitely.

70.    As a direct and proximate result of PSC's acts and omissions in failing to protect and secure Private Information, Plaintiffs and Class members have been placed at a substantial risk of harm in the form of identity theft and have incurred and will incur actual damages in an attempt to prevent identity theft.

71.    Plaintiffs retain an interest in ensuring there are no future breaches, in addition to seeking a remedy for the harms suffered because of the Data Breach on behalf of both themselves and similarly situated individuals whose Private Information was accessed in the Data Breach.

## I.    Plaintiff Anna Moore's and Ashley Gwen Lacombe's Experience

72.    Plaintiffs Anna Moore and Ashley Gwen Lacombe were and are holders of a valid Louisiana driver's licenses. As part of being a licensed driver in the state of Louisiana, Plaintiffs Moore and Lacombe shared highly sensitive PII and financial account information with the OMV.

73.    The Louisiana OMV was a customer of PSC and utilized the MOVEit program to "securely" transfer and store the sensitive Private Information of its customers.

74.    Upon information and belief, Plaintiffs Moore and Lacombe's Private Information was transmitted to PSC and stored on its databases via the MOVEit program. Thereafter,

cybercriminals including the Cl0p ransomware gang, accessed and exfiltrated Plaintiffs' Private Information.

75.    As a result of the Data Breach, Plaintiffs Moore and Lacombe have made reasonable efforts to mitigate the impact of the Data Breach, including, but not limited to, researching the Data Breach and reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud. Plaintiffs Moore and Lacombe have spent several hours dealing with the Data Breach, valuable time Plaintiffs otherwise would have spent on other activities, including, but not limited to, work and recreation.

76.    As a result of the Data Breach, both Plaintiff Moore and Plaintiff Lacombe have suffered anxiety due to the public dissemination of their PII, which they believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and using her Private Information for purposes of identity theft and fraud. Plaintiffs Moore and Lacombe are concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

77.    Plaintiff Moore and Plaintiff Lacombe suffered actual injury from having their Private Information compromised because of the Data Breach including, but not limited to (a) damage to and diminution in the value of his Private Information, a form of property that Defendant obtained from Plaintiffs; (b) violation of their privacy rights; and (c) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

78.    As a result of the Data Breach, Plaintiff Moore and Plaintiff Lacombe anticipate spending considerable time and money on an ongoing basis to try to mitigate and address harm caused by the Data Breach. As a result of the Data Breach, Plaintiff Moore and Plaintiff Lacombe

are at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

### V.    CLASS ALLEGATIONS

79.    Plaintiffs bring this action on behalf of himself and, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), a Class of:

> All persons in the United States whose Private Information was accessed in the Data Breach.

Excluded from the Class are Defendant, its executives and officers, and the Judge(s) assigned to this case. Plaintiffs reserve the right to modify, change or expand the Class definition after conducting discovery.

80.    Numerosity: Upon information and belief, the Class is so numerous that joinder of all members is impracticable with the number of affected individuals estimated to be in the millions.[31] The exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of PSC and obtainable by Plaintiffs only through the discovery process. The members of the Class will be identifiable through information and records in PSC's possession, custody, and control.

81.    Existence and Predominance of Common Questions of Fact and Law: Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

> a.    Whether PSC's data security and retention policies were unreasonable;
>
> b.    Whether PSC failed to protect the confidential and highly sensitive information with which it was entrusted;

---

[31] Vitality, just one of PSC's customers, had over 30 million users.

c.    Whether PSC owed a duty to Plaintiffs and Class members to safeguard their Private Information;

d.    Whether PSC breached any legal duties in connection with the Data Breach;

e.    Whether PSC's conduct was intentional, reckless, willful or negligent;

f.    Whether an implied contract was created concerning the security of Plaintiffs' and Class members' Private Information;

g.    Whether PSC breached that implied contract by failing to protect and keep secure Plaintiffs' and Class members' Private Information and/or failing to timely and adequately notify Plaintiffs and Class members of the Data Breach;

h.    Whether Plaintiffs and Class members suffered damages as a result of PSC's conduct; and

i.    Whether Plaintiffs and the Class are entitled to monetary damages, injunctive relief and/or other remedies and, if so, the nature of any such relief.

82.    <u>Typicality</u>: All of Plaintiffs' claims are typical of the claims of the Class since Plaintiffs and all members of the Class had their Private Information compromised in the Data Breach. Plaintiffs and the members of the Class sustained damages because of PSC's uniform wrongful conduct.

83.    <u>Adequacy</u>: Plaintiffs are adequate representatives because their interests do not materially or irreconcilably conflict with the interests of the Class they seek to represent, they have retained counsel competent and highly experienced in complex class action litigation and intend to prosecute this action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of the Class. Neither Plaintiffs nor their counsel have any interests that are antagonistic to the interests of other members of the Class.

84.    <u>Superiority</u>: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual

prosecution of the complex and extensive litigation necessitated by PSC's conduct. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Members of the Class can be readily identified and notified based on, *inter alia*, PSC's records and databases.

85.    PSC has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final relief with respect to the Class as a whole.

## VI.    CAUSES OF ACTION

### COUNT I – Negligence

86.    Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

87.    This count is brought on behalf of all Class members.

88.    PSC owed a duty to Plaintiffs and the Class to use and exercise reasonable and due care in obtaining, retaining, and securing the Private Information that PSC collected.

89.    PSC owed a duty to Plaintiffs and the Class to provide security, consistent with industry standards and requirements, and to ensure that its cyber networks and systems, and the personnel responsible for them, adequately protected the Private Information that PSC collected.

90.    PSC owed a duty to Plaintiffs and the Class to implement processes to quickly detect a data breach, to timely act on warnings about data breaches, and to inform the victims of a data breach as soon as possible after it is discovered.

91.    PSC owed a duty of care to Plaintiffs and the Class because they were a foreseeable and probable victim of any inadequate data security practices.

92.    PSC gathered and stored the Private Information belonging to Plaintiffs and the Class.

93.    PSC knew or should have known it inadequately safeguarded this information.

94.    PSC knew that a breach of its systems would inflict millions of dollars of damages upon Plaintiffs and Class members, and PSC was therefore charged with a duty to adequately protect this critically sensitive information.

95.    PSC had a special relationship with Plaintiffs and Class members. Plaintiffs' and Class members' highly sensitive Private Information was entrusted to PSC on the understanding that adequate security precautions would be taken to protect the PII and medical information. Moreover, only PSC had the ability to protect its systems and the Private Information stored on them from attack.

96.    PSC's own conduct also created a foreseeable risk of harm to Plaintiffs, Class members, and their PII. PSC's misconduct included failing to: (1) secure its systems, servers, and networks, despite knowing their vulnerabilities, (2) comply with industry standard security practices, (3) implement adequate system and event monitoring, and (4) implement the safeguards, policies, and procedures necessary to prevent this type of data breach.

97.    PSC breached its duties to Plaintiffs and Class members by failing to provide fair, reasonable, or adequate cyber networks and data security practices to safeguard the Private Information belonging to Plaintiffs and the Class.

98.    PSC breached its duties to Plaintiffs and the Class by creating a foreseeable risk of harm through the misconduct previously described.

99.     PSC breached the duties it owed to Plaintiffs and Class members by failing to implement proper technical systems or security practices that could have prevented the unauthorized access of Private Information.

100.    The law further imposes an affirmative duty on PSC to timely disclose the unauthorized access and theft of the Private Information belonging to Plaintiffs and the Class so that Plaintiffs and the Class can take appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuse of their Private Information.

101.    PSC breached the duties it owed to Plaintiffs and the Class by failing to timely and accurately disclose to Plaintiffs and Class members that their Private Information had been improperly acquired or accessed.

102.    PSC breached its duty to timely notify Plaintiffs and Class members of the Data Breach by failing to provide direct notice to Plaintiff and the Class concerning the Data Breach.

103.    As a direct and proximate result of PSC's conduct, Plaintiffs and the Class have suffered a drastically increased risk of identity theft, relative to both the time period before the breach, as well as to the risk born by the general public, as well as other damages, including but not limited to time and expenses incurred in mitigating the effects of the Data Breach.

104.    As a direct and proximate result of PSC's negligent conduct, Plaintiffs and the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

## COUNT II – Negligence Per Se

105.    Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

106.    This count is brought on behalf of all Class members.

107.    Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC,

the unfair act or practice by companies, such as PSC, of failing to use reasonable measures to protect PII. Various FTC publications and orders also form the basis of PSC's duty.

108.    PSC violated FTC rules and regulations obligating companies to use reasonable measures to protect Private Information by failing to comply with applicable industry standards; and by failing to provide reasonable notice of the actual breach. PSC's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored, the foreseeable consequences of a Data Breach and the exposure of Plaintiff's and Class members' sensitive Private Information.

109.    PSC's violations of Section 5 of the FTC Act and other applicable statutes, rules, and regulations constitute negligence *per se*.

110.    Plaintiffs and the Class are within the category of persons the FTC Act was intended to protect.

111.    The harm that occurred because of the Data Breach described herein is the type of harm the FTC Act was intended to guard against.

112.    As a direct and proximate result of PSC's negligence *per se*, Plaintiffs and the Class have been damaged as described herein, continue to suffer injuries as detailed above, are subject to the continued risk of exposure of their Private Information in PSC's possession, and are entitled to damages in an amount to be proven at trial.

## **COUNT III – Breach of Third-Party Beneficiary Contract**

113.    Plaintiffs incorporate and realleges all allegations above as if fully set forth herein.

114.    This count is brought on behalf of all Class Members.

115.    Upon information and belief, Defendant entered into virtually identical contracts with its customers to provide secure file transfer services to them. The terms of these contracts

included material descriptions of PSC's data security practices, procedures, and protocols sufficient to safeguard Private Information that its customers would entrust to PSC.

116.    Such contracts were made expressly for the benefit of Plaintiffs and the Class Members, as it was their Private Information that PSC agreed to receive and protect through its services. Thus, the benefit of collection and protection of the Private Information belonging to Plaintiffs and the Class Members was the direct and primary objective of the contracting parties and Plaintiffs and Class Members were direct and express beneficiaries of such contracts.

117.    PSC knew that Plaintiffs and the Class Members would suffer substantial harm in the event it breached these contracts with its customers.

118.    Through various actions and inactions including its failure to secure its MOVEit program and databases, failure to timely detect and patch security vulnerabilities, and failure to timely detect a security breach, PSC breached its contracts with its customers.

119.    As foreseen at the formation of these contracts, PSC's breach caused Plaintiffs and the Class Members to be harmed through, *inter alia*, the continuous and substantially increased risk of identity theft, the loss in value of their Private Information, and lost time in attempting to mitigate the consequences of the breach.

120.    Accordingly, Plaintiffs and the Class are entitled to damages in an amount to be determined at trial, along with costs and attorneys' fees incurred in this action.

## COUNT IV – Unjust Enrichment

121.    Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

122.    This count is brought on behalf of all Class Members.

123.    Plaintiffs and the Class have an interest, both equitable and legal, in their Private Information that was collected and maintained by PSC.

124.    PSC benefited by the conferral upon it of Plaintiffs' and Class members' Private Information and by its ability to retain and use that information. PSC understood that it was in fact so benefitted.

125.    PSC also understood and appreciated that Plaintiffs' and Class members' Private Information was private and confidential, and its value depended upon PSC maintaining the privacy and confidentiality of that information.

126.    But for PSC's willingness and commitment to maintain its privacy and confidentiality, Plaintiffs and Class members would not have provided or authorized their Private Information to be provided to PSC.

127.    As a result of PSC's wrongful conduct as alleged herein (including, among other things, its deception of Plaintiffs, the Class, and the public relating to the nature and scope of the data breach; its failure to employ adequate data security measures; its continued maintenance and use of the Private Information belonging to Plaintiffs and Class members without having adequate data security measures; and its other conduct facilitating the theft of that Private Information PSC has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and the Class.

128.    PSC's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein, including the compiling and use of Plaintiffs' and Class members' sensitive Private Information, while at the same time failing to maintain that information secure from intrusion.

129.    Under the common law doctrine of unjust enrichment, it is inequitable for PSC to be permitted to retain the benefits it received, and is still receiving, without justification, from Plaintiffs and the Class in an unfair and unconscionable manner. PSC's retention of such benefits under circumstances making it inequitable to do so constitutes unjust enrichment.

130.    The benefit conferred upon, received, and enjoyed by PSC was not conferred officiously or gratuitously, and it would be inequitable and unjust for PSC to retain the benefit.

131.    Furthermore, Plaintiffs have no adequate remedy at law.

132.    PSC is therefore liable to Plaintiffs and the Class for restitution in the amount of the benefit conferred on PSC because of its wrongful conduct, including specifically the value to PSC of the PII and medical information that was accessed and exfiltrated in the Data Breach and the profits PSC receives from the use and sale of that information.

133.    Accordingly, Plaintiffs and the Class are entitled to damages in an amount to be determined at trial, along with costs and attorneys' fees incurred in this action.

## COUNT V – Invasion of Privacy

134.    Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

135.    This count is brought on behalf of all Class members.

136.    Plaintiffs and Class members had a reasonable expectation of privacy in the Private Information that PSC possessed and/or continues to possess.

137.    By failing to keep Plaintiffs' and Class members' Private Information safe, and by misusing and/or disclosing their Private Information to unauthorized parties for unauthorized use, PSC invaded Plaintiffs' and Class members' privacy by:

a.    Intruding into their private affairs in a manner that would be highly offensive to a reasonable person; and

b.    Publicizing private facts about Plaintiffs and Class members, which is highly offensive to a reasonable person.

138.    PSC knew, or acted with reckless disregard of the fact that, a reasonable person in Plaintiff's position would consider PSC's actions highly offensive.

139.    PSC invaded Plaintiffs' and Class members' right to privacy and intruded into Plaintiffs' and Class members' private affairs by misusing and/or disclosing their private information without their informed, voluntary, affirmative, and clear consent.

140.    As a proximate result of such misuse and disclosures, Plaintiffs' and Class members' reasonable expectation of privacy in their Private Information was unduly frustrated and thwarted. PSC's conduct amounted to a serious invasion of Plaintiffs' and Class members' protected privacy interests.

141.    In failing to protect Plaintiffs' and Class members' Private Information, and in misusing and/or disclosing their Private Information, PSC has acted with malice and oppression and in conscious disregard of Plaintiffs' and the Class members rights to have such information kept confidential and private, in failing to provide adequate notice, and in placing its own economic, corporate, and legal interests above the privacy interests of its millions of individuals. Plaintiffs, therefore, seek an award of damages, including punitive damages, on behalf of Plaintiffs and the Class.

## COUNT VI – Declaratory Judgment and Injunctive Relief

142.    Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

143.    This count is brought on behalf of all Class members.

144.    Under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described herein.

145.    An actual controversy has arisen in the wake of the Data Breach regarding PSC's present and prospective common law and other duties to reasonably safeguard Plaintiffs' and Class

members' Private Information, and whether PSC is currently maintaining data security measures adequate to protect Plaintiffs and Class members from further data breaches that compromise their Private Information. Plaintiffs allege that PSC's data security measures remain inadequate.

146.    Plaintiffs and the Class continue to suffer injury as a result of the compromise of their Private Information and remain at imminent risk that further compromises of their Private Information will occur in the future.

147.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring that PSC continues to owe a legal duty to secure Plaintiffs' and Class members' Private Information, to timely notify them of any data breach, and to establish and implement data security measures that are adequate to secure Private Information.

148.    The Court also should issue corresponding prospective injunctive relief requiring PSC to employ adequate security protocols consistent with law and industry standards to protect Plaintiffs' and Class members' Private Information.

149.    If an injunction is not issued, Plaintiffs and the Class will suffer irreparable injury and lack an adequate legal remedy. The threat of another breach of the Private Information in PSC's possession, custody, and control is real, immediate, and substantial. If another breach of PSC's network, systems, servers, or workstations occurs, Plaintiffs and the Class will not have an adequate remedy at law, because many of the resulting injuries are not readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

150.    The hardship to Plaintiffs and the Class if an injunction is not issued exceeds the hardship to PSC if an injunction is issued. Among other things, if another massive data breach occurs at PSC, Plaintiffs and the Class will likely be subjected to substantial identify theft and other damage. On the other hand, the cost to PSC of complying with an injunction by employing

reasonable prospective data security measures is relatively minimal, and PSC has a pre-existing legal obligation to employ such measures.

151.    Issuance of the requested injunction will serve the public interest by preventing another data breach at PSC, thus eliminating additional injuries to Plaintiffs and the thousands of Class members whose confidential information would be further compromised.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually, and on behalf of all members of the Class, respectfully request that the Court enter judgment in their favor and against PSC, as follows:

A.    That the Court certify this action as a class action, proper and maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure; declare that Plaintiffs are proper class representatives; and appoint Plaintiffs' Counsel as Class Counsel;

B.    That Plaintiffs be granted the declaratory relief sought herein;

C.    That the Court grant permanent injunctive relief to prohibit PSC from continuing to engage in the unlawful acts, omissions, and practices described herein;

D.    That the Court award Plaintiffs and the Class members compensatory, consequential, and general damages in an amount to be determined at trial;

E.    That the Court award Plaintiffs and the Class members statutory damages, and punitive or exemplary damages, to the extent permitted by law;

F.    That the Court award to Plaintiffs the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses;

G.    That the Court award pre- and post-judgment interest at the maximum legal rate;

H.    That the Court award grant all such equitable relief as it deems proper and just, including, but not limited to, disgorgement and restitution; and

I.    That the Court grant all other relief as it deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of herself and the putative Class, demands a trial by jury on all issues so triable.

Date: July 25, 2023                              Respectfully Submitted,

_/s/ Patrick J. Sheehan_
Patrick J. Sheehan (BBO# 639320)
**WHATLEY KALLAS, LLP**
101 Federal Street, 19th Floor
Boston, Massachusetts 02110
Telephone: (617) 203-8459
Facsimile: (800) 922-4851
psheehan@whatleykallas.com

John G. Emerson (_pro hac vice_ to be filed)
**EMERSON FIRM, PLLC**
2500 Wilcrest Drive
Suite 300
Houston, Texas 77042-2754
Telephone: (800) 551-8649
Facsimile: (501) 286-4659
Jemerson@emersonfirm.com

_Attorneys for Plaintiff and the Proposed Class_